Okay, we have also for the United States here. You can sit down for the moment because we're going to need. Oh, come somebody. Our final case this morning is number 18-2227 Moody versus United States. Ms. Motto, you're supposed to be in the courtroom so that we don't have to wait for you. Not in the lobby. That's not good enough. Okay, Mr. Paschota. May it please the court, counsel. Your Honor, this is a case involving a five-year lease that started in 2011 and was going to expire in 2015. Are there four leases here? Is that right? There's five leases, actually. Five leases? Starting in 2011. Your complaint seems to be inconsistent about that. One of the things you say is that it's not clear who the other party is, that is, the tribal party. But I look at the appendix here, and I find that at least in the modifications, it's quite clear that the other party is the Oglala Sioux, and the modifications are signed by a tribal representative. So in that sense, we know who the contracting parties appear to be on the face of the contract. Okay. I agree with that, Your Honor. And I'm going to jump to what I think your point is. Your point is under Algama and under O'Brien by this court that this court has no jurisdiction. But in this case, we're dealing with a termination of leases. And in termination of leases, only the Bureau can terminate the lease. It's not the tribe. The tribe has no responsibility or no power in terminating the lease. They can recommend, but they don't go through. They don't send the letters. They don't take the action to terminate the lease, as was done in this particular case. It was all Bureau employees. There was not one tribal person involved in this. This is a sensible argument, and under the restatement, if we were dealing with common law, the trustee would probably be considered to be a party to the contract, and you'd be in good shape. But our difficulty is we've got the Algama case in the Supreme Court, which seems to tell us that the United States should not be considered to be a party to the contract between the third party and the tribal entity. If I may, Your Honor, I'd like to cite a quotation out of Algama. It says, the exercise of the power to safeguard the disposal of property, quote, does not necessarily involve the assumption of contractual obligation, end of quote, and, quotation, is not to be presumed in the absence of any action taken by the government or on its behalf indicating such a purpose. I think that Algama, while maybe some precedent for the dismissal of this action, certainly leaves that narrow possibility that if the government somehow has assumed the responsibility, as it has in terminating this lease, then they can be held responsible for the breach of that contract. Where's the language that you're reading from Algama? That's at page 271 of Algama. No, there's no 271. The lease begins on 415. Yeah. I don't know what that, I... You're not the U.S. reporter? Yeah, I could have been. It could be the wrong report. But I am stating that quotation accurately, Your Honor. And I think that's what we have in this particular... Probably around page 422 or 423 of the Supreme Court report. Yeah. How does that sentence start again? How does the paragraph start? It exercises the power to safeguard the disposal of property, quote, does not necessarily involve the assumption of contractual obligation, end quote, end quote, is not to be presumed in the absence of any action taken by the government or on its behalf indicating such a purpose. So... And the other thing, Your Honor, when you're talking about... I can't find it. I mean, I don't know. I don't want to spend a lot of time trying to look at it. It would be helpful to know where that language appears. The government has wide responsibility in... Is it at 421? Yeah.  Late in 421. Paragraph begins the action of Congress, but it's way down. So, what is your argument here? That there's action by the government indicating a purpose that the United States is a party to the contract? Yes, I think... How did it indicate that? I think by the government's... It was tribal... It was government officials. It wasn't the Indians that terminated this lease. They had nothing to do with it. I mean, as the facts of this case are that in... After the farming was done in 2012, my clients are trying to settle up so that they could... That's what trustees do. They do... They act on behalf of the beneficiary. And surely, now the government contemplates that the United States' trustee is going to take actions that reflect its independent judgment. Well, I think, Your Honor, that when you have the government only taking the responsibility, only undertaking every action that terminated this lease, that they can have some responsibility for what happened in this particular case. Now, understand the facts. Yeah. After the 2012 lease was completed, they were trying to get ready to proceed with the lease in 2013. So they start about November 12, trying to ascertain, trying to get a number from the Bureau that they had to pay in terms of what to settle up for 2012. They make some checks out. The checks come back because they have to be certified checks. They spent about six months back and forth on that. And then on 4-22, after the Bureau told them that they owed $43,465 and it had to be in a certified check, my client... Does it always have to be in a certified check? Certified. That's the standard procedure for everybody? No, it's not. There's nothing requiring that. But that's what they told them. So my client goes to the BIA office, and he says, all right, here's a certified check. He gets his call from his wife while he's in the office, and she says, Vernon, we have, we got four letters here saying that they're going to terminate our leases because we haven't paid and for some other reasons. So he says, Mr. Superintendent, Mr. Robert Eckbe, what should we do? Robert Eckbe says, forget about it. Go farm. You got the check. Go farm. He says, should there be something in writing? Mr. Eckbe, the Bureau, says, no, you don't need anything in writing. So we have a letter of 418 terminating the leases, and now we have him telling them to go ahead and farm the land. So they proceed, and you have to understand, this is springtime in South Dakota. You have to get your crops in, or you're not going to have any crops. And that's, they knew that at the time. So they go out and they spend thousands of dollars in planting this corn and wheat and other things on this land, invested substantial monies, and then about, well, six weeks later on June 3rd, two tribal officials come out and tell them they're trespassing. And Moody goes to the Pine Ridge office again, and he says, what's this all about? And then there was a new superintendent, Cleve Hermenihorces, and Mr. Hermenihorces says, well, he says, I'm going to follow the decision that was made by Mr. Eckfee. You go ahead and continue to farm the land. So he, so Mr. Eckfee, so my client then, he says, well, I better call the Aberdeen area office, which is a supervisory office over Pine Ridge. And he talks to a lady, and she says, no, go ahead. I've got nothing on record showing that you've been terminated from this lease. Go ahead and farm the land. So he goes back, starts farming it again, and then a few days later they come out, and they say, no, get off of the land. Get your stuff out of here. Remove yourself, or we'll remove you. You can't be on the land. What happened to the land and the crops after that? The crops, Your Honor, stayed in the ground. They were harvested, and they were sold by the Bureau. And we got nothing. That was our thousands of dollars that were taken to plant that crop, which we got nothing back in return for that particular crop. And that's one of the primary arguments in this particular case. So if you just look at the face of the contract, the original contract, like you've looked at, Judge, yeah, you could, if you don't think that the quotation that I talked about is sufficient and the facts don't show that the Bureau did this, you have to then go on to whether or not on the 418, the letters on 418 terminated. They terminated the lease. So if they terminated the lease then, when they told them to go back out there, that had to be a revival of the lease in this particular case. What about the argument that the written agreement was already in existence, and the law says that if there's a written agreement in existence, there can't be an implied contract? Well, I don't know how the written lease could have been in existence since it was terminated. And I need to say that the leases, at least some of these leases in this case, say that if the lease is terminated, it will be terminated effectively immediately. They don't have to wait 30 days, as the government argues in this case. But the lease then was terminated. We have the 418 letter. If we're going to go back out and operate, which we did in this case,  that lease was terminated. And then it was revived for six, seven, or eight weeks there before they finally threw us off the land on June 3. So there really is, your honor, a written lease in existence. I thought the claims court pointed to a regulation that indicated that the government doesn't have the authority or the power to enter into contracts without the pre-approval of the tribe. When you're talking about an initial approval of a lease, that's probably right. But then once you take a lease and you start administering the lease, the Bureau has a lot of responsibility. And not only can they terminate leases, they can make leases on behalf of Indian people, especially in this case. Are you arguing that the lease was improperly terminated? Well, the lease was... Yeah, we had a contract. We were deprived of not only... Does the complaint allege that the lease was improperly terminated? Yeah. Not improperly terminated, it was breached. Yeah. You know, there had to be... Right, they didn't have the right to breach the contract. Okay. Do you want to save your rebuttal time? We'll give you two minutes and let's hear from the government. Yes, yes. Ms. Martel? May it please the Court? Let me tell you what I think the problem is here. Putting aside the Algoma case, which is important, but let's put it to one side for a moment. The restatement is pretty clear that a trustee is personally liable on a contract made by him in the course of the administration of the trust. And there are plenty of Supreme Court cases and cases in our Court saying that in the context of Indian law, that we look to restatement principles. So, if putting aside Algoma, why wouldn't the United States, by virtue of the restatement, be treated as a party to this contract with personal liability? Well, Your Honor, the government would not be treated as a party to the contract because these leases were entered into pursuant to the American Indian Agricultural Resource Management Act. And Congress enacted that act with the specific purpose that the United States would carry out its trust responsibility and reflecting that the relationship with the Indians. And it is, it is a very unique relationship. And the Supreme Court discussed this distinct relationship in Hickory, Apache Nation, where in that case, the Indians did try to argue that common law principles, the common law fiduciary rule should apply in an evidentiary issue. And the Supreme Court said that the trust relationship between the United States and the Indians is very distinct, and we can't actually just apply regular rules of evidence or regular common law rules or all restatement rules. Yeah, but your problem is that there are restatement rules, which the Supreme Court has applied in the context of India. Yes, that's true, Your Honor. But in this particular case, because in the ARMA, the Congress has specifically said that when the United States is managing and enforcing these kinds of leases, agricultural leases to be specific, they really are only acting in their role as a fiduciary and a trustee. They are not acting on the United States' behalf. Well, that's certainly true, but that doesn't mean that they can't be liable as trustee. What's the language of the statute you're relying on here? Where do we find that? So it's in the ARMA, so it's 25 U.S.C. No, but is it quoted in your brief or what? In the brief, no. Well, the brief discusses all of these sections of the ARMA, yes. But it doesn't quote it? It quotes part of it, or it would probably paraphrase as much of the ARMA, Your Honor. Well, what's the specific provision you're relying on, would you say? So it's 3701 in the findings. Congress finds and declares that the United States has a trust responsibility to protect, conserve, utilize, and manage Indian agricultural lands consistent with its fiduciary obligation and its unique relationship with Indian tribes. And then in the second part, which is the purposes under Section 3702, it says the purposes of this chapter are to carry out the trust responsibility of the United States and promote the self-determination of Indian tribes by providing for the management of Indian agricultural lands. That doesn't seem to me to say the United States is trustee, it's not a party to the contract. Well, I think this court has held in cases like Senega Gardens and when it affirmed O'Brien that when we are looking at whether there is privity of contract, so whether a plaintiff can bring a case for breach of contract, there must be privity. And the only way you can determine whether the United States is a party to a contract is by looking at the actual document itself. The United States said that in Algoma and this case, this court discussed it in Senega Gardens and said that... The Senega Gardens, that doesn't involve the United States acting as a trustee, that was the case involving HUD, right? No, it doesn't, Your Honor. It was. But the plaintiffs in that case tried to allege a breach of contract claim against HUD because HUD was heavily involved in the oversight of this low-income housing project. And the arguments were very akin to the plaintiff's argument in this case, which is the United States should effectively be held a party to this contract. But there was no statute in that case that talked about the United States being a trustee, right? No, Your Honor. But the arguments were very similar as far as plaintiffs really desire that the United States should be held a party to the contract such that they can be sued for breach. Do you agree that if we applied Section 261, 262 of the restatement here, the United States would be treated as a party to the contract? If you applied? I don't, Your Honor, only because Congress has specifically spoken. No, put that aside. I'm just saying let's assume that we were to hold or some Supreme Court were to hold a 261, 262 governed relationship here. Just looking at the restatement, would that make the United States a party to the contract? I don't think it would, Your Honor, because I don't. Why is that? Even though the United States acts in its role as a trustee, I don't think that role as a trustee would make them a party to this contract such that there is privity of contract. Because? Because the way you determine who is a party to a contract is by looking at the document itself. In this particular case, the leases are, as you can see on Appendix 18, they're between the Moody's and the Indian landowners. The regulations define a lease as a written agreement between a lessee and Indian landowners. Then when would Restatement 262 ever apply? Maybe in another case. You're saying that only if you're a named party, but that seems to go right against the content of Section 262 of the Restatement. I think the Indians can always sue the United States for violation of a trust relationship. But outside the context of a contract that plaintiffs entered into with a party that's not the United States. I would think maybe your argument would be that in Algoma, the Supreme Court, at least for purposes of trustee relationships between the United States and the tribes, has effectively displaced Restatements 262. Or alternatively, the government's just never given any indication of a waiver of sovereign immunity in this particular context. Absolutely, Your Honor. A waiver of sovereign immunity must be explicitly alleged, as Your Honor was indicating. And we have not waived sovereign immunity either under the Act. The Act explicitly states that the United States does not waive its sovereign immunity. And the only way that there could be privity of contract in this case or that the United States has waived its sovereign immunity is if they are a party to the contract, and they are not here. The facts of this case really bother me. And it looks like the government, the BIA, really messed around with the Moody's. And so what should Mr. Moody have done? I mean, obviously, you want to say that they have no recourse to go to the Court of Federal Claims to sue the government, who was acting as a trustee. But then what should have Mr. Moody done at the time when he was getting these cancellation notices, but then being told, don't worry about those cancellation notices, and then ultimately being told, being evicted off the land? What was his recourse? What was the reasonable thing that was entirely foreseeable for Mr. Moody to do at that point in time? Well, Your Honor, the cancellation notices that were sent to him do indicate that he had a right to appeal. And that is what Mr. Moody should have said. Appeal where? It would have been appealed to the regional director, yes. If you are appealing a decision, in this case, the cancellation. So he shouldn't have listened to what the BIA employees were telling him about, don't worry about it. You don't have to appeal. Assuming those allegations to be true, Your Honor, if a BIA official. We are to assume those are to be true, given the procedural posture of this case, right? Absolutely. Assuming those to be true, those statements by a BIA official do not overcome what the regulations state and what the notices of cancellation told Mr. Moody. And that was that they informed him of his appeal rights. And that's what he should have done in this case. He should have appealed to the regional director, which then he could have appealed that decision to the interior board of Indian affairs or Indian appeals. I'm sorry. And then if he didn't like that decision, he could have then appealed to district court under an APA standard of review. So he is not left entirely without a remedy, but he did not timely pursue it in this case. And fairness considerations aside, this is what Congress seems to have intended under the ARMA. They did intend that the United States be heavily involved. How do we know that they intended under the statute that the United States not be treated the way a trustee would usually be treated? And that is to be liable personally for acts in breach of a contract. Well, I think throughout the statute and the findings and the purpose portion that I cited earlier, they specifically state that to the extent the United States is acting, they are only acting in their relationship as a trust. Well, that almost cuts the other way. I mean, they're saying they should be treated as though they're a trustee. It doesn't say we're going to not apply the usual trust law. But the act does explicitly state that the United States does not waive sovereign immunity. And that doesn't change the fact that in any given case, the United States must unambiguously waive sovereign immunity to be sued for damages. And if the act doesn't waive it, and in this case it doesn't, it must be the contract and the contract in this case doesn't because the United States is not a party. Well, there's a waiver of sovereign immunity if they're a party to the contract, right? Absolutely. If they are a party to the contract, which in this case they are not. And to get to plaintiff's next claim, which is their oral and implied in fact lease, your honors were asking about, aren't there regulations in this case that the trial court relied on? And the trial court did rely on regulations in this case. Opposing counsel said that on April 18th, when the plaintiffs received cancellation notices, those were effectively cancellations, but they were not the regulations in this case state that a cancellation notice is just a notice. The cancellation does not become final until 30 days after the plaintiff receives that notice. And then on the 31st day, if they do not appeal, that's when that decision becomes final and that's when the leases are canceled. So on April 22nd, when the Moody's went in and spoke to a BIA official, an oral lease or a new lease could not have been entered. Did the cancellation notice make reference to the regulation? Yes, your honor. So in this particular case, because the written leases were in effect at this time, there was an oral lease could not be created. And beyond that, no BIA official had the authority to enter into a new unilaterally enter into a new oral lease on behalf of the Indians or the United States in this case. Because as I indicated, the United States has never any waiver of sovereign immunity must be explicit. It cannot be implied from the actions of the parties in this case. And then finally to plaintiff's third claim, plaintiffs have failed the state of takings claim in this case is your alleged that they are entitled to prevail on their takings claim because the BIA acted on lawfully or because the BIA acted contrary to their regulations. And this court's decisions and lion raisins, Del Rio with energy explicitly state that if the plaintiff claims that they, that they should prevail on their taking claim because the agency acted on lawfully, that is not a takings claim. And that is what plaintiffs amended complaint explicitly says here. So the plaintiffs have failed to say the takings claim. Okay. Thank you. Ms. Mono. Okay. Mr. Pachauda. Give me two minutes here. Just briefly, your honor. Uh, the United States is a title holder to this land. It holds a legal title. We know that, um, the, the, they're the ones that, that, that wrote the letter on April 18th, terminating the lease. They're the ones that revived the lease. When they revived the lease, however you look at it, there had to be something that, that, that, that came over, that, that took precedent over that April 18th termination letter. Uh, and so it was revived by the Bureau in this case, as, as, you know, on behalf of the Indians, they did it. It was Bureau people, not, not the Indians. So they made that particular agreement. Now they have authority, as I said, and I cited the, the various provisions of the regulations in my brief about the authority of the, of the, of the, of the Bureau to take, um, extraordinary, um, actions to protect and make sure that the land is free generating. And, and, and that's what they were doing in this particular case, because they had to make sure that this land was farmed. And there was some money generated for it, for the owners of the land to have when, when the, uh, when the farm products were harvested in the fall in this case. So, um, uh, clearly they took the action here, um, in this case. Um, as far as, uh, uh, what we could have done, the April 18th letter, um, if that's the termination letter, we had 30 days to appeal. When we were thrown off the land on June, uh, soon after June 3rd, there was 30 days that expired. Couldn't appeal that. And so we didn't have any, we didn't have any, uh, um, uh, solution to, uh, to, uh, try to get some recompense for the money that we were out in this case. Yeah, I think we're out of time. Thank you. Thank you. Thank you both counsel. The case is submitted. That concludes our session for this morning. All right.